United States District Court
District Court of Maine

| | | |
|---|---|---|
| GLEN PLOURDE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:20-cv-00011-JAW |
| | ) | |
| REDINGTON-FAIRVIEW HOSPITAL, et al., | ) | |
| | ) | |
| Defendants | ) | |

## Amended Complaint

## I. Parties to the Complaint

Plaintiff

1. Glen Plourde
7 Hussey Road Apt 3
Albion, Kennebec County
Maine 04910
207.659.2595
Glen.Plourde@Gmail.com

Defendant #1

2. Redington-Fairview General Hospital
46 Fairview Avenue
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #2

3. Unknown Redington-Fairview Hospital Ambulance Crew Member #1
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976

207.474.5121
Email Unknown

Defendant #3

4. Unknown Redington-Fairview Hospital Ambulance Crew Member #2
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #4

5. Unknown Redington-Fairview Hospital Ambulance Crew Member #3
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #5

6. Unknown Redington-Fairview Hospital Ambulance Crew Member #4
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #6

7. Unknown Redington-Fairview Hospital Ambulance Crew Member #5
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #7

8. Unknown Redington-Fairview Hospital Nurse #1
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #8

9. Unknown Redington-Fairview Hospital Nurse #2
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #9

10. Unknown Redington-Fairview Hospital Nurse #3
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #10

11. Unknown Redington-Fairview Hospital Nurse #4
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #11

12. Unknown Redington-Fairview Hospital Nurse #5
Expect R-FH has this information.

46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #12

13. Unknown Redington-Fairview Hospital Nurse #6
Expect R-FH has this information.
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #13

14. Unknown Maine State Crisis Employee #1
Expect R-FH has name/address information
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #14

15. Unknown Maine State Crisis Employee #2
Expect R-FH has name/address information
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #15

16. Unknown Maine State Crisis Employee #3
Expect R-FH has name/address information
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121

Email Unknown

Defendant #16

17. Unknown Maine State Crisis Employee #4
Expect R-FH has name/address information
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

Defendant #17

18. Unknown Maine State Crisis Employee #5
Expect R-FH has name/address information
46 Fairview Avenue (Redington-Fairview General Hospital)
Skowhegan, Somerset County
Maine 04976
207.474.5121
Email Unknown

## II. Jurisdiction and Venue

19. This Court has subject matter jurisdiction over Plaintiff's Federal Constitutional Claims pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983 and 1988, as this action arises under the Constitution and laws of the United States.

20. This Court has subject matter jurisdiction over Plaintiffs' Maine State Constitutional and Civil Claims pursuant to 28 U.S.C. § 1367, as those claims are substantially related, both legally and factually, to the Federal Constitutional Claims upon which original jurisdiction is premised.

21. This Court has personal jurisdiction over the Defendants as they are all residents of Maine.

22. Venue in this district is proper under 28 U.S.C. § 1391(b) because the Defendants are residents of the district, and the events giving rise to the claim occurred within the district.

23. This case is properly filed in Bangor because the Plaintiff was subject to unlawful action in Somerset County.

### III. Statement of Facts

24. On or about the night of January 10 2017, at approximately 11:00pm, the Plaintiff left his apartment at The Kyes Motel, 125 West Front Street, Skowhegan Maine 04976 and went for a walk down West Front Street, walking East in the direction of downtown Skowhegan.

25. Just before the bridge to Island Avenue and near the intersection of Main Street, the Plaintiff was verbally engaged by a young woman who for reasons unknown to the Plaintiff was shouting derogatory and inflammatory statements at him from further up Main Street. Plaintiff shouted something non-confrontational back at her exactly once. Plaintiff includes this fact because it may be salient to (¶90).

26. Plaintiff crossed the bridge to Island Avenue and decided not to continue into downtown Skowhegan. Plaintiff instead sat on a park bench on Island Avenue for 10-15 minutes enjoying the crisp winter air and starry, moonlit night before turning around and walking West on West Front Street back to his apartment at The Kyes Motel, 125 West Front Street.

27. At approximately the corner of West Front Street and Main Street, the Plaintiff was ambushed by an Ambulance which stopped in the road approximately 10-15 feet in front of him.

28. There was no emergency and the Plaintiff was not impaired in any way ("unimpaired capacity") (See Exhibit A).

29. This ambulance was later identified as a Redington-Fairview Hospital Ambulance although the Plaintiff had no idea who it belonged to at that time.

30. Approximately five people exited the ambulance, approached and surrounded the Plaintiff and immediately placed the Plaintiff in handcuffs.

31. These people were later identified as Redington-Fairview Hospital Ambulance Crew Members (Defendants "Unknown Redington-Fairview Hospital Crew Members #1 - #5") although they never introduced themselves nor did the Plaintiff have any idea of who they were at that time. Their uniforms (distinct badges on the shoulders, nametags, etc.) gave the Plaintiff the impression that they were law enforcement

personnel of some type as their uniforms were rather identical to those of law enforcement personnel.

32. At that point Plaintiff stood handcuffed with approximately two ambulance crew members behind him and approximately three ambulance crew members in front of him. Plaintiff and the ambulance crew members in front of him stood looking at one another without word for an unusually lengthy period of time (perhaps 10 – 15 seconds) and finally one of the three ambulance crew members standing in front of him said incitefully; "Is that all"?

33. At this point, Plaintiff realized he was not only being taken against his will ("kidnapped") by these people but they were attempting to provoke him as well.

34. At this incitement, Plaintiff made a token and obviously futile attempt to struggle with his handcuffs, at which point he was immediately and forcefully taken to the ground by the Redington-Fairview Hospital Ambulance Crew, placed in four-point restraints ("hog-tied"), and violently dragged across the pavement towards the rear of the ambulance.

35. Plaintiff was then restrained in a gurney and once inside the ambulance, was given an unknown injection that rendered him immediately unconscious.

36. Plaintiff cannot recall the exact number of Redington-Fairview Hospital Ambulance Crew Members associated with that ambulance but remembers it to have been unusually large; no less than five people including the driver (Defendants; "Unknown Redington-Fairview Hospital Crew Members #1 – #5"). Plaintiff has a reasonable and justifiable belief that the identities of these people will be revealed through the Formal Discovery Process, at which time the proper identification and exact number of these Defendants will be updated accordingly as is Fair, Just and Proper.

37. Plaintiff is aware that there are traffic cameras at that intersection and cameras associated with that ambulance, whose footage can and will be subpoenaed during the Formal Discovery Process that will corroborate this rather unusual chain of events.

38. Plaintiff therefore asserts that he was kidnapped and held unlawfully and against his will by the Redington-Fairview Hospital Ambulance Crew, a violation of his United States Constitutional Fourth

Amendment Rights and Maine State Constitution Article 1 Section 5 Rights, that being unlawful seizure of his person.

39. Plaintiff furthermore asserts that he was subjected to Medical Malpractice.by the Redington-Fairview Hospital Ambulance Crew as they first approached and handcuffed him for no apparent or stated reason, then intentionally provoked him, then took him to the ground and hog-tied him, then violently dragged him across the pavement, restrained him in a gurney, and administered an injection to him which rendered him immediately unconscious.

40. Plaintiff awoke briefly in what he believes was some type of emergency room; it had all the trappings of an emergency room and there was a man who appeared to be a very irate doctor immediately present but that man did not interact with the Plaintiff aside from giving the Plaintiff a cup of water. Plaintiff also noticed he was attached to an IV drip tapped into a vein in his arm that was administering an unknown solution directly into the Plaintiff's blood. Plaintiff immediately removed this unknown and unnecessary IV drip himself. Plaintiff was not conscious for long and has little additional memory of this situation/encounter.

41. Plaintiff awoke during what he believes was the morning of the following day, January 11 2016, and found himself confined inside a small room with a bed, countertop, sink, and nothing more. The room's door was locked and the Plaintiff was unable to exit the small room.

42. Plaintiff had no idea where he was at this point in time.

43. Plaintiff was visited that day by multiple (at least two, perhaps three) people who identified themselves as Maine State Crisis Team Members, who explained that the Plaintiff was confined to the Redington-Fairview Hospital Emergency Room. These people held conversation with the Plaintiff that he understands to have been a "Crisis Assessment Upon Admission" (their job function, see Exhibit A and Exhibit F page 3) although very little, if anything, was discussed besides the fact that the Plaintiff was refusing all medical attention and demanding his immediate release, and the Maine State Crisis Team Members refused to release him (unlawful, see Exhibit A).

44. Plaintiff was at no time then or subsequent to that time ever given any reason or excuse as to why he was being confined against his will at Redington-Fairview Hospital, nor was he told under what authority he

was being held against his will there; despite his repeated inquiries (unlawful, see Exhibit A).

45. Plaintiff had similar unproductive conversations with additional Maine State Crisis Team employees (perhaps an additional two or three; totaling maybe five in total; Defendants "Maine State Crisis Team Members #1 - #5) over the next day or two, who entered his room to speak with him although little, if anything, was discussed besides the fact that the Plaintiff was refusing all medical attention, demanding his immediate release, and that the Maine State Crisis Team was refusing to release him (unlawful, see Exhibit A).

46. Plaintiff has a reasonable and justifiable belief that the identities of these Maine State Crisis Team Members will be revealed through the Formal Discovery Process, at which time the proper identification and exact number of these Defendants will be updated accordingly as is Fair, Just and Proper.

47. The Maine State Crisis Team is composed of workers contracted by the State of Maine, specifically the Department of Health and Human Services, and these individuals were therefore acting as State Actors in all of their interactions with the Plaintiff at Redington-Fairview Hospital (See Exhibits B, C, D, E, F, G).

48. Plaintiff had immediately and constantly refused all medical treatment and demanded to be released and both the Maine State Crisis Team Members and all Redington-Fairview Hospital Staff he dealt with (numerous, presumably nurses; six or more in total; Defendants "Unknown Redington-Fairview Nurses #1 – #6"; updated as necessary during the Formal Discovery Process) refused to release the Plaintiff and forced "medical treatment" upon him (unlawful, see Exhibit A), although they gave the Plaintiff no reason or excuse as to why he was being confined there, nor was he told under what authority he was being held there or why they would not release him, despite his repeated inquiries (unlawful, see Exhibit A).

49. There was no emergency and the Plaintiff was not impaired in any way ("unimpaired capacity") (See Exhibit A).

50. Plaintiff had not abjugated his self-authority to another person or entity nor had he been arrested or involuntarily committed, this was not an emergency situation and the Plaintiff had explicitly refused all medical attention and demanded to be released (See Exhibit A).

51. Plaintiff therefore asserts he was being held unlawfully and against his will by The Maine State Crisis Team and Redington-Fairview Hospital and its staff, a violation of his United States Constitutional Fourth Amendment Rights and Maine State Constitution Article 1 Section 5 Rights, that being unlawful seizure of his person.

52. Plaintiff furthermore asserts that he was subjected to Medical Malpractice by the Maine State Crisis Team and Redington-Fairview Hospital and its staff as he had refused any and all medical treatment and there was no lawful reason to hold him, yet they refused to release him and forced "medical treatment" upon him.

53. Plaintiff was told he was confined to an emergency room although his room and the adjacent rooms looked nothing like any emergency room he had ever seen. There appeared to be one additional room exactly like his as described in (¶41), a community bathroom/shower shared by both rooms, a small room with multiple chairs and a television, a larger community room that adjoined all of the rooms, and a glassed-in (walled off with a large amount of glass) "command and control area" where there was at all times at least one, usually two or three, individuals who appeared to be law enforcement officers (as in ¶31), who kept watch on all of the rooms that were within the Plaintiff's isolated unit; all of which were within plain sight of the glassed-in "command and control area".

54. There was no medical equipment of any kind visible which is common in all "emergency rooms" the Plaintiff has ever seen, even those in third world countries.

55. Plaintiff asserts that the isolated unit he was confined in appeared to be some type of "holding area" or "observation area" or both although he was repeatedly told by The Maine State Crisis Team Members and Redington-Fairview Staff that he was in an "emergency room".

56. On approximately 01/12/17 or 01/13/17, the Plaintiff was told to take the neuroleptic drug Haldol by one of the Redington-Fairview nurses, who brought it to him in a packaged pill format.

57. Plaintiff initially refused to take the Haldol but was coerced into taking it by the Redington-Fairview Medical Staff he dealt with as they told him that if he took it he would be released sooner than if he did not (lying and coercion; unlawful, see Exhibit A), and it was by this time clear that Redington-Fairview would not release the Plaintiff regardless

of how many times he demanded his release, refused treatment, or tried to reason with them (as described in ¶¶44 - 45, 48).

58. After taking Haldol for approximately two days the Plaintiff began to experience detrimental mental side effects such as impairment of motor coordination, severe somnolence, a feeling of being "out of sorts" and "not himself", and detrimental physical side effects such as complete loss of appetite and severe constipation.

59. Plaintiff complained of these side effects to one of the Redington-Fairview nurses who did not appear to care and insisted the Plaintiff continue to take the Haldol.

60. At that point, the Plaintiff again invoked his right to refuse treatment and refused to continue taking Haldol. The Plaintiff told his nurse at that time, self-identified as "Alyssa" ("Unknown Redington-Fairview Nurse #1") that he was refusing medical treatment and refusing to take any more Haldol.

61. "Unknown Redington-Fairview Nurse #1" ("Alyssa") left the Plaintiff's room and returned approximately 10 – 15 minutes later with two large, muscular, uniformed (uniforms as noted in ¶31 and ¶53) men and a loaded syringe that she announced was an injectable Haldol that would be injected into the Plaintiff, with the help of any and all personnel it would require to restrain the Plaintiff during the injection, should the Plaintiff refuse to take Haldol orally (unlawful, see Exhibit A).

62. Not wanting to precipitate a physical confrontation or altercation, nor be unwillingly injected with an unknown quantity of what was said to be Haldol, the Plaintiff was thus coerced into taking Haldol orally and against his wishes (unlawful, see Exhibit A).

63. Plaintiff had not abjugated his self-authority to another person or entity nor had he been involuntarily committed; this was not an emergency situation and the Plaintiff had invoked his right to refuse treatment.

64. Plaintiff therefore asserts that he was subjected to Medical Malpractice by the Redington-Fairview Hospital and its staff, who forced the Plaintiff to take the neuroleptic medication Haldol despite the fact that he had refused to which is his right ("refused treatment").

65. Plaintiff attempted to invoke his right to refuse treatment subsequently and with his different nurses (Unknown Redington-Fairview Nurses #2 – #6") and was always told that should he refuse to take Haldol orally

and in the presence of the nurse(s), he would be injected against his will as had been previously threatened (¶61).

66. Furthermore, the Plaintiff's daily dose of prescription anti-anxiety medication that he takes for Post Traumatic Stress Disorder (diagnosed in approximately 2006) was reduced by 25 – 50% (it varied day to day) by his attending nurses for no stated reason or explanation during his stay at Redington-Fairview, despite the fact that the Plaintiff's full prescription was on his person and was therefore being stored with his belongings at Redington-Fairview and was therefore easily verifiable by the staff at Redington-Fairview, which he made them aware of.

67. This dramatic and instantaneous reduction (titration off of) of the Plaintiff's prescription anti-anxiety medication is 200% – 400% below the minimum "safe level" recommended by every Physicians Desk Reference Manual the Plaintiff has ever read (and he has read half a dozen or more) and is likewise 200% – 400% below the minimum "safe level" recommended by every Psychiatrist who has ever prescribed the Plaintiff with this anti-anxiety medication.

68. Such a sudden reduction in the Plaintiff's prescription anti-anxiety medication as detailed in (¶¶66 – 67) puts him at serious risk for seizure and other serious and highly-undesirable nervous-system complications, as well as makes the patient (the Plaintiff) extremely uncomfortable, anxious and frightened, as it did at Redington-Fairview.

69. Plaintiff therefore asserts that he was subjected to Medical Malpractice by the Redington-Fairview Hospital and its staff, who unilaterally and without explanation cut the Plaintiff's long-standing (10+ years) anti-anxiety prescription literally in half (¶¶66 – 67), despite the risks of doing so that are well known to the medical community (¶68).

70. The Plaintiff was held in this Redington-Fairview "emergency room" in the manner described in the preceding paragraphs for approximately ten days, from approximately January 11 2017 – January 21 2017.

71. On or about the night of January 20 2017 the Plaintiff was told by his attending nurses to do a "Teledoc Conference" with a doctor from Acadia Hospital in Bangor, Maine.

72. The Plaintiff was given an "authorization and release form" for the Teledoc Conference, which he refused to sign.

73. A large television, computer, and web-camera were nonetheless wheeled into the Plaintiff's room in an attempt to coerce and intimidate the Plaintiff into participating in the Teledoc Conference. It appeared that the Teledoc Conference was going to take place, whether the Plaintiff agreed to it or not.

74. The Plaintiff made it clear to the attending nurses that he had no intention of participating in or cooperating with a Teledoc Conference with Acadia Hospital, nor would he sign any authorization or release form allowing such a conference.

75. After a few hours the attending nurses stopped attempting to coerce the Plaintiff into participating in the Teledoc Conference, announced that the Acadia doctor "had gone home for the night", and removed the television, computer, and web-camera from the Plaintiff's room.

76. The Plaintiff was informed the following morning that he was being transferred to Acadia Hospital in Bangor Maine.

77. The Plaintiff refused such transfer and again insisted upon his release.

78. It was made painstakingly clear to the Plaintiff by the Redington-Fairview staff that he was being transferred to Acadia Hospital whether he agreed or not, and he could either go the easy way, and cooperate, or the hard way, and be physically and/or chemically restrained in the process.

79. The Plaintiff therefore cooperated with this transfer out of fear he would be subject to physical force by the Redington-Fairview Staff or be subject to an injection that would render him unconscious, or both (as in ¶61).

80. Thus, on the night of approximately January 21 2016, the Plaintiff was strapped into and restrained in a gurney and removed from Redington-Fairview Hospital in Skowhegan, Maine and transferred to Acadia Hospital in Bangor, Maine via Redington-Fairview Ambulance.

81. Plaintiff speculates that this transfer was cover for the Medical Malpractice he was subject to for approximately ten days as described in the preceding paragraphs of this complaint.

82. Plaintiff had not abjugated his self-authority to another person or entity nor had he been arrested or involuntarily committed, this was not an emergency situation and he had explicitly refused all medical treatment and demanded to be released (See Exhibit A).

83. Plaintiff therefore asserts he was being held unlawfully and against his will and was now being transferred to Acadia Hospital in Bangor unlawfully and against his will by Redington-Fairview Hospital and its staff, a violation of his United States Constitutional Fourth Amendment Rights and Maine State Constitution Article 1 Section 5 Rights, that being unlawful seizure of his person.

84. Plaintiff furthermore asserts that he was subjected to Medical Malpractice by Redington-Fairview Hospital and its staff, who transferred him to Acadia Hospital despite the fact that there was no lawful reason to do so and the Plaintiff had refused such transfer.

85. Plaintiff, to the best of his recollection, was never asked to, nor did he ever, fill out any paperwork of any kind during or after he was forced to receive "medical attention" against his will for no less than ten days at Redington-Fairview Hospital. Plaintiff finds this fact suspicious.

86. Furthermore, the Plaintiff never received a Bill or Invoice of any sort for the "medical attention" he received at Redington-Fairview Hospital. Plaintiff finds this fact suspicious.

87. The only evidence the Plaintiff has that he was even at Redington-Fairview Hospital is the Hospital Bracelet he was made to wear while there.

88. The Plaintiff is confident Redington-Fairview Hospital will provide Hospital Records of his stay there during the Formal Discovery Process although the Plaintiff doubts the integrity of those records for reasons that should be obvious given the Facts in this complaint.

89. Although no staff at Redington-Fairview ever told the Plaintiff why he had been taken and held there despite his repeated inquiries (¶44), the Plaintiff's mother has told him that she had been told by either The Maine State Crisis Team or Redington-Fairview Staff that the Plaintiff was alleged to have been "causing a disturbance" while out on his walk (¶¶24 – 26).

90. Plaintiff has no reason to believe that he was alleged to have caused any sort of disturbance other than the facts noted in (¶25).

91. Furthermore, the Plaintiff rightfully believes that responding to complaints of a public disturbance or an individual "causing a disturbance" or something of that nature falls under the job

responsibility and jurisdiction of Law Enforcement, not the medical profession.

92. Plaintiff finds it peculiar and highly suspicious that an ambulance apparently, to the best of his knowledge, responded to a complaint of an individual "causing a disturbance" and hospital staff subsequently "incarcerated" the Plaintiff, with no involvement from Law Enforcement whatsoever.

93. No Public Law Enforcement Agency of any type responded to any complaints of the Plaintiff "causing a disturbance" despite the Fact that The Maine State Police Troop C Barracks are located at 162 West Front Street, less than half a mile from the site where the Plaintiff was "taken into custody" by Redington-Fairview Hospital.

94. The town of Skowhegan also has its own Police Force and Department as well, located at 225 Water Street, less than half a mile from the site where the Plaintiff was "taken into custody" by Redington-Fairview Hospital.

95. It would seem logical that if there were complaints of public disturbance or an individual "causing a disturbance" or something of that nature, the complaints would have been made by private citizens via 9-1-1 and routed to either the Skowhegan Police Department or The Maine State Police for response, not the Redington-Fairview Hospital.

96. The Plaintiff finds the fact that he has been forcefully kidnapped (as described in ¶¶27 – 39) by a Redington-Fairview Hospital Crew and subsequently held against his will by Redington-Fairview General Hospital for no less than ten days, administered "medical treatment" against his will during that time, and then transferred to another medical facility against his will to be highly disturbing.

97. Plaintiff has been diagnosed with Post Traumatic Stress Disorder ("PTSD") in approximately 2006 and this incident has aggravated that condition and left a lasting scar on his psychological and emotional well-being.

98. Plaintiff was extremely disturbed by this incident and this unofficial involuntary incarceration and forced medical treatment at Redington-Fairview Hospital (Plaintiff was never judged by a court to have "impaired capacity" nor were the Laws of Informed Consent to Treatment followed; See Exhibit A) and has suffered a high-degree of

anxiety, fear and emotional distress during this unofficial involuntary incarceration.

99. Plaintiff is still extremely disturbed by this incident and this unofficial involuntary incarceration and forced medical treatment at Redington-Fairview General Hospital and continues to suffer a high-degree of anxiety and emotional distress as a result of this situation. Years have passed yet the memories remain, and they are extremely unpleasant, frightful and anxiety-provoking.

100. Plaintiff now knows that he can be kidnapped and drugged as described in (¶¶27 – 39) and taken to a medical facility and held against his will for an unstated and indeterminate amount of time for no reason whatsoever, and this Fact causes the Plaintiff a high-degree of anxiety, fear, and emotional distress.

101. Plaintiff is now afraid to venture outside after dark alone as he is aware that he could again be subject to kidnapping as described in (¶¶27 – 39).

102. Plaintiff now harbors a well-founded distrust of the medical community as clearly the "medical treatment" he was forced to receive from Redington-Fairview was not in his best interest nor was it even legal.

103. Plaintiff now has the well-founded and justifiable belief that this unlawful, unofficial involuntary incarceration and forced medical treatment could happen to him again at any time in the future.

104. Plaintiff wishes to preempt a *Neitzke*-like challenge to this complaint by reminding The Honorable Court that The United States Supreme Court has held that "a court may dismiss a claim as factually frivolous only if the facts alleged are "clearly baseless"". *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). The Facts alleged in this complaint are clearly not baseless as the Fact that the Plaintiff was an in-patient at Redington-Fairview Hospital during the time of approximately January 11 2017 – January 21 2017 is indisputable and the Hospital Records will undeniably support some, if not all, of the Facts of this complaint (delivery by ambulance, time-frame, drug dosing, etc.). Furthermore, both Redington-Fairview Hospital Security Footage and the Traffic and Ambulance Cameras at the intersection where the Plaintiff was abducted will corroborate the facts of this complaint and the Plaintiff will obtain this evidence during the Formal Discovery Process.

105. Plaintiff wishes to preempt a *Denton*-like challenge to this complaint by recognizing that this complaint is perhaps not ordinary in the sense that

some of the Facts are rather grievous, heinous, and perhaps unusual. After all, who wants to believe that in the United States of America, people are kidnapped after dark by ambulance, drugged and then brought to a medical facility and held against their will and subjected to forced medical treatment for ten days before being transferred by that medical facility to a second facility, again against their will. That type of atrocity only happens to political dissidents in third-world countries and iron-fisted Communist Dictatorships, right? Well, unfortunately, wrong; it does happen to citizens of the United States of America and it has happened to the Plaintiff as described in this complaint.

106. The United States Supreme Court has held that "An in forma pauperis complaint may not be dismissed, however, simply because the court finds the plaintiff's allegations unlikely" and continues to elaborate and finally concludes by quoting the great poet George Gordon Lord Byron; "Some improbable allegations might properly be disposed of on summary judgment, but to dismiss them as frivolous without any factual development is to disregard the age old insight that many allegations might be "strange, but true; for truth is always strange. Stranger than fiction."" *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Medical Providers are forced to pay billions of dollars each year as a result of Medical Malpractice with literally hundreds of thousands, if not millions, of people falling victim to medical malpractice annually. The fact that the Plaintiff has become a victim of medical malpractice is therefore far from unlikely or strange given the statistics and the Plaintiff's Pedigree as discussed in Exhibits A and B.

## IV. Claims for Relief

### Count 1

42 U.S.C. § 1983 – Deprivation of United States Constitutional Rights.

Glen Plourde v. Unknown Maine State Crisis Team Members #1 - #5.

107. Paragraphs (24) – (106) are incorporated by reference as if pled herein.

108. Plaintiff alleges that Unknown Maine State Crisis Team Members #1 - #5 have deprived him of his Fourth Amendment Rights, as applied to the States by the Fourteenth Amendment, through unlawful seizure of his person and as such are liable to the Plaintiff for damages under 42 U.S.C. § 1983 as well as punitive damages to deter such deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 2

5 M.R.S. § 4682 – Intentional Deprivation of United States Constitutional Rights.

Glen Plourde v. Redington-Fairview General Hospital et al.

109. Paragraphs (24) – (106) are incorporated by reference as if pled herein.

110. Plaintiff alleges that all Defendants have intentionally deprived him of his Fourth Amendment Rights, as applied to the States by the Fourteenth Amendment, through unlawful seizure of his person and as such are liable to the Plaintiff for damages under 5 M.R.S § 4682 and Article 1 Section 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of United States Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 3

5 M.R.S. § 4682 – Intentional Deprivation of Maine State Constitutional Rights.

Glen Plourde v. Redington-Fairview General Hospital et al.

111. Paragraphs (24) – (106) are incorporated by reference as if pled herein.

112. Plaintiff alleges that all Defendants have intentionally deprived him of his Article 1 Section 5 Rights secured by The Maine State Constitution, through unlawful seizure of his person, and as such are liable to the Plaintiff for damages under 5 M.R.S § 4682 and Article 1 Section 19 of The Maine State Constitution as well as punitive damages to deter such intentional deprivation of Maine State Constitutional Rights from occurring to the Plaintiff or to any other citizen again.

## Count 4

24 M.R.S. § 2853 – Medical Malpractice.

Glen Plourde v. Redington-Fairview General Hospital et al.

113. Paragraphs (24) – (106) are incorporated by reference as if pled herein.

114. Plaintiff alleges that all Defendants have engaged in intentional medical malpractice, and as such are liable to the Plaintiff for damages as a result of that malpractice as well as punitive damages to deter such intentional medical malpractice from occurring to the Plaintiff or to any other citizen again.

## V. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 09/28, 2020

Signature of Plaintiff ____________________

Printed Name of Plaintiff Glen Plourde